## Hall *v.* Freaney, Appellant.

Argued May 11, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*W. D. Gallup,* with him *F. D. Gallup* and *E. G. Potter,* of *Gallup, Potter & Gallup,* for appellant.

*R. T. Mutzabaugh,* with him *F. M. Nash,* of *Nash & Mutzabaugh,* for appellee.

OPINION BY MR. JUSTICE STERN, May 25, 1942:

On September 26, 1940, at about 5:30 P. M. standard time, plaintiff drove a truck eastwardly along the southerly side of East Main Street in the City of Bradford, and parked it three or four inches from the south curb. East Main Street is a principal and much travelled thoroughfare; indeed, it is a main artery of traffic, 32 feet from curb to curb with a white line marking the centre. There were no street intersections near the point where plaintiff parked his truck. The accident which ensued is thus described by plaintiff: "I looked in the mirror to see if the traffic was clear back of me, and I didn't see any traffic, so I opened the door and got out and as I closed the door I see the approaching traffic was too close to cross, so I stood there about a minute waiting for traffic to go through, and as the traffic passed— there was two or three cars that went through—this one car pulled out of line close to my truck, before I had a chance to jump, and it caught me between his right front fender and my left front fender and threw me in front of my truck." On cross-examination he made this further explanation: "Q. Now, after you stopped your car, just what did you do? A. Well I looked in the mirror to see if there was any traffic coming before I got out. I didn't see any. I stepped out and closed the door, and the traffic was coming too close to pass through, so I stayed there waiting for it to pass. Q. When you first got out, did you step on the running board? A. Yes. Q. Then, did you step down on to the street? A. *I looked first before I stepped off of the running board.* Q. In what direction did you look? A. To the west back of me. Q. What did you see? A. *I saw traffic coming then.* Q. What was that traffic you speak of? A. I don't know how many cars were in line. There were several cars in line going east. Q. *That is while you were standing on the running board?* A. *Yes.* Q. *Then what did you do?* A. *Just closed the door and stood waiting for them to go through?* Q. *Stood on the running board?* A. *No.* Q.

*Where were you standing then?* A. *Right beside the truck.* Q. *In other words, you got down on to the concrete?* A. *Yes.* Q. *On to the roadway. Then you shut the door?* A. *I shut the door when I went down."* According to the evidence traffic was proceeding in both directions, the line of automobiles and trucks coming from the west running a foot or two to the right or south of the marked center line. Defendant's truck, which was in this line close to the vehicle ahead of it, swerved slightly to the right and struck plaintiff standing there.

The trial court should have granted defendant's motion for judgment n. o. v. because plaintiff was guilty of contributory negligence. The distance between curbs being 32 feet, the southerly half of the highway, for eastbound travel, was 16 feet. Plaintiff's truck was 7 feet in width. Assuming that defendant's truck and other vehicles in the procession were at least 6 feet wide and adding the foot or two between the center line and the eastwardly moving traffic, the 3 or 4 inches between plaintiff's truck and the south curb, and another 2 or 3 inches which plaintiff said was the distance he stood away from his truck, we have a total of $14\frac{1}{2}$ or $15\frac{1}{2}$ feet, leaving only, at the most, a foot and a half of clear space for plaintiff to stand in between his truck and the moving vehicles. He himself estimated this space at 2 or 3 feet in width, but, even accepting that as the correct figure, he was in an extremely narrow lane of dubious safety. The drivers of the passing automobiles and trucks closely following one another would scarcely, if at all, have been able to see him between the side of the vehicle ahead in the line and the parked truck, and their slightest swerve to the right was bound to put him in dire peril, especially as he had no adequate way to retreat. While it is not always negligence per se to descend from a standing vehicle on the side toward the open road if careful observation be made of approaching vehicles, plaintiff in the present case saw the heavy traffic approaching before he stepped down from the running board, and thus

he voluntarily placed himself in a position of acute danger, instead of remaining, as he should have done, in a place of safety inside his truck or at least on the running board. Moreover, when he assumed this dangerous position, he must have observed that he would be obliged to occupy it for some appreciable time — he was actually there for a minute or a minute and a half—before the completed passage of the oncoming traffic would enable him to start across the street.

"For a person to place himself suddenly in the cartway of a busy highway, with oncoming traffic close by, where a false step by him or a slight deviation of the course of a vehicle might cause his serious injury or death, constitutes conduct that can only be regarded as being grossly careless and negligent": *Heath v. Klosterman,* 343 Pa. 501, 505, 23 A.2d 209, 211; see also *Goff v. College Hill Borough,* 299 Pa. 343, 347, 149 A. 477, 479.

Judgment reversed and here entered for defendant.

Mr. Justice MAXEY and Mr. Justice PATTERSON dissent.